1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.M., individually and on behalf of all others similarly situated,

Plaintiff,

v.

LABORATORY SERVICES COOPERATIVE,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff M.M. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Laboratory Services Cooperative ("LSC," "Laboratory Services Cooperative," or "Defendant"). Plaintiff's allegations are based on personal knowledge as to her own actions and experiences, and on information and belief as to all other matters, based on an investigation conducted by and through her attorneys. Plaintiff believes that substantial additional evidentiary support for these allegations will be obtained after a reasonable opportunity for discovery.

**INTRODUCTION**

1.      LSC is a designated non-profit, independent clinical laboratory headquartered in Seattle, Washington. Since its founding in April 2010, LSC has specialized in providing high-quality diagnostic testing services to a network of select Planned Parenthood health centers across the United States. Serving health centers in more than 35 states, LSC plays a critical role

CLASS ACTION COMPLAINT - 1

in supporting the delivery of comprehensive reproductive health care. In this capacity, LSC manages a wide array of responsibilities, including the secure handling of highly sensitive personal health information, laboratory test results, and complex billing data. Its services are integral to ensuring timely, accurate diagnostics and maintaining the confidentiality and integrity of patient care in a complex regulatory environment.

2.      In order to receive diagnostic testing services from certain Planned Parenthood clinics, patients must entrust LSC with highly sensitive and personally identifiable information ("PII") as well as personal health information ("PHI") (collectively, "Private Information"). LSC collects and uses this information in the course of its regular business operations as an affiliate of Planned Parenthood. To reassure patients, Planned Parenthood represents that it and its affiliates, including LSC, "respect and are committed to protecting the privacy of users of our websites, applications, and other online and electronic services,"  and that they "understand that health information about you and your healthcare is personal" and "are committed to protecting health information about you."

3.      Despite these assurances, LSC failed to safeguard the patient information entrusted to it, resulting in a data breach that compromised the personal information of more than one million individuals, as announced by Defendant on April 10, 2020.

4.      LSC failed to adequately secure and protect the highly sensitive PII and protected PHI of its patients. The compromised data included, but was not limited to, full names, Social Security numbers, driver's license and passport numbers, other government-issued identification, dates of service, diagnoses, treatments, laboratory test results, health insurance details, billing records, bank account information, and payment card data. LSC also failed to implement and maintain industry-standard security measures necessary to safeguard its information systems and the sensitive data they contained. Furthermore, LSC did not provide timely, accurate, or adequate notice to Plaintiff and other Class members regarding the

CLASS ACTION COMPLAINT - 2

unauthorized access and compromise of their Private Information, depriving them of the opportunity to take immediate steps to mitigate the harm.

5.    As a result of Laboratory Services Cooperative's inadequate security measures and breach of its duties and obligations, the Private Information of Plaintiff and Class Members was unlawfully accessed and disclosed to an unauthorized criminal third party. Plaintiff and Class Members have suffered injuries that are the direct and proximate result of Defendant's misconduct. These injuries include: (i) out-of-pocket expenses incurred in preventing, detecting, and addressing identity theft, social engineering, and other unauthorized uses of their Private Information; (ii) opportunity costs and lost time associated with mitigating the consequences of the Data Breach; (iii) the ongoing and significantly increased risk that unauthorized parties will continue to access and misuse their Private Information; (iv) the continued risk that Private Information still in Defendant's possession will be subject to further unauthorized disclosures so long as adequate protective measures are not implemented; (v) invasion of privacy and heightened risk of fraud and identity theft; (vi) theft of their Private Information and the corresponding loss of privacy rights; and (vii) diminution in value and/or loss of control over their Private Information, which constitutes a form of property entrusted to Defendant.

6.    Although the breach involved particularly sensitive data, even the most basic elements of Private Information are highly valuable to cybercriminals, who use such data to craft convincing, personalized phishing schemes. The exfiltrated information—the full scope of which Laboratory Services Cooperative has failed to publicly disclose—enables hackers to assemble detailed profiles of individuals, track their movements, and infer personal behaviors and backgrounds. When combined, this stolen data effectively gives cybercriminals a master key to victims' personal lives, allowing them to link additional information, access personal accounts, and gain insights into individual preferences. As a result, hackers are now able to

CLASS ACTION COMPLAINT - 3

1  construct a three-dimensional portrait of each victim and exploit patients of Laboratory

2  Services Cooperative with alarming precision.

3      7.     LSC disregarded the rights of Plaintiff and Class Members by, among other

4  things, failing to implement adequate and reasonable measures to secure its data systems

5  against unauthorized access; failing to disclose that its computer systems and security protocols

6  were insufficient to safeguard Private Information; failing to take standard, readily available

7  precautions to prevent the Data Breach; and failing to properly train its staff and employees on

8  appropriate data security practices.

9      8.     In addition, Laboratory Services Cooperative failed to properly monitor its

10  computer network and systems that housed the Private Information. Had it properly monitored

11  these electronic and cloud-based systems, it would have discovered the intrusion sooner or

12  prevented it altogether.

13      9.     Accordingly, Plaintiff brings this action on behalf of herself and all others

14  similarly situated to address Defendant's failure to adequately safeguard the Private

15  Information it collected and maintained on behalf of the Class. To remedy these legal

16  violations, Plaintiff and the Class seek actual damages, statutory damages, restitution,

17  injunctive relief, reasonable attorneys' fees, costs and expenses incurred in prosecuting this

18  action, and any other relief the Court deems just and proper.

19                                  **PARTIES**

20      10.    Plaintiff M.M.  is a natural person and resident of Trumansburg, New York. In

21  March 2019, she visited a Planned Parenthood location in Ithaca, where blood work was, upon

22  information and belief, processed by Defendant. Plaintiff entrusted her Private Information to

23  her medical provider—and by extension, Defendant—with the reasonable expectation that

24  appropriate security measures would be used to protect it from unauthorized access.

25      11.    Defendant Laboratory Services Cooperative is a designated non-profit

26  organization based in Seattle, Washington, with its principal place of business located at 2001

CLASS ACTION COMPLAINT - 4

1  E Madison St, Seattle, WA 98122. Defendant conducts business, providing laboratory testing
2  services to Planned Parenthood health centers and their patients across thirty-five (35) U.S.
3  states.

4  **JURISDICTION AND VENUE**

5  12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
6  Section 1332(d) because this is a class action where the aggregate amount in controversy
7  exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100
8  members in the proposed class, and at least one Class Member is a citizen of a state different
9  from Defendant. This Court has supplemental jurisdiction over any state law claims pursuant to
10  28 U.S.C. Section 1367.

11  13.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action
12  because a substantial part of the events, omissions, and acts giving rise to the claims herein
13  occurred in this District: Defendant's principal place of business is located in this District from
14  where its board of directors and/or officers direct Defendant's activities including their actions
15  and inactions leading to the data breach at issue; Defendant gains revenue and profits from
16  doing business in this District; Class Members were affected by the breach from Laboratory
17  Services Cooperative's actions and inactions directed from this District.

18  **FACTUAL ALLEGATIONS**

19  14.    Laboratory Services Cooperative is a provider of diagnostic laboratory testing
20  services for numerous Planned Parenthood clinics. Defendant collects and processes the
21  personal data of its affiliates' patients, including patients of Planned Parenthood clinics across
22  thirty-five (35) U.S. states. To purchase services from Defendant, patients are forced to entrust
23  Defendant with their Private Information.

24  15.    The information collected and stored by Defendant includes, but is not limited
25  to, personal identifiers, such as full names, SSNs, driver's license or passport numbers, medical
26  information, such as dates of service, diagnoses, treatments, and lab results, health insurance

CLASS ACTION COMPLAINT - 5

information, such as plan types, insurers, and member/group ID numbers, and billing and financial information, such as claims, billing details, and bank/payment information.

16. Defendant holds itself out as a trustworthy entity, which recognizes and values its patients' privacy and personal information and has repeatedly assured its patients of this through its affiliation with Planned Parenthood.

17. Plaintiff and other similarly situated patients relied to their detriment on Defendant's uniform representations and omissions regarding data security, including Defendant's failure to alert patients that its security protections were inadequate, and that Defendant would forever store Plaintiff's and Class Members' Private Information, failing to archive it, protect it, or at the very minimum warn consumers of the anticipated and foreseeable data breach.

18. Plaintiff and other similarly situated patients trusted Defendant with their sensitive and valuable Private Information.

19. Had Defendant disclosed to Plaintiff and its other patients that its data systems were not secure and were vulnerable to attack, Plaintiff would not have purchased Defendant's services.

**A.    The Breach**

20. At all material times, Laboratory Services Cooperative failed to maintain proper security measures despite its promises of safety and security to consumers.

21. On October 27, 2024, Defendant's computer system was breached by cybercriminals as a result of Defendant's failure to adequately secure its network. At the time, Defendant neither notified its patients nor made any public announcement about the significant security incident. By February 2025, an investigation conducted by third-party digital forensics experts confirmed that personal information—including protected health information—of Laboratory Services Cooperative patients and employees had been accessed by the threat actors.

CLASS ACTION COMPLAINT - 6

22.     Although Defendant became aware of the breach on October 27, 2024, it remained silent and failed to notify the affected individuals for nearly six months—a troubling and unjustifiable delay that further highlights Defendant's disregard for its patients.

23.     On or around April 10, 2025, Defendant finally began notifying some patients, including Plaintiff, of the Data Breach via a website posting after nearly six months had passed since Defendant learned of the unauthorized access.

24.     In its statement, Defendant fails to provide sufficient information about the Data Breach or the steps it is taking to address the vulnerabilities and protect patients' information going forward. As a result, many consumers are left to speculate whether their PII and PHI were compromised and whether their data remains secure in Defendant's hands. Rather than offering transparency, Defendant downplays the severity of the breach and the harm suffered by those affected.

**B.    Plaintiff's Experiences**

25.     In order to obtain laboratory testing services from her medical provider—and, by extension, from Laboratory Services Cooperative—Plaintiff was required to provide her Private Information to Planned Parenthood. Planned Parenthood, in turn, transmitted that information to Laboratory Services Cooperative, which then input it into its systems.

26.     Upon information and belief, Defendant has failed to provide actual notice of the Data Breach to all affected individuals.

27.     As a result of the Data Breach, Plaintiff has suffered additional harm, including damage to and a loss in the value of her Private Information—a form of intangible property she entrusted to Defendant. This information holds inherent value, which Plaintiff was deprived of when her data was negligently exposed and maliciously exfiltrated by cybercriminals.

28.     Plaintiff also suffered injury in the form of a loss of privacy when her Private Information was accessed and obtained by unauthorized third parties without her consent.

CLASS ACTION COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

29.     Given the highly sensitive nature of the compromised information, the Data Breach has caused Plaintiff to face imminent harm stemming from a substantially increased risk of identity theft, financial fraud, and other misuse of her Private Information. This information is now in the hands of criminals as a direct and proximate result of Defendant's misconduct. Moreover, it remains possible that additional categories of information—yet to be disclosed by Defendant—were also compromised in the breach.

30.     As a direct consequence of the actual harm already suffered—and the continuing, significant risk of future harm—Plaintiff has been forced to devote substantial time and energy to addressing issues stemming from the Data Breach. This includes actively monitoring her accounts for signs of fraud, responding to a marked increase in spam emails and text messages, and changing personal identifiers and passwords across numerous platforms. The time and effort Plaintiff was compelled to expend—much of it in response to instructions from Defendant—are irretrievably lost.

31.     The substantial risk of imminent harm and the invasion of Plaintiff's privacy have also caused her to experience emotional distress, including heightened stress, fear, anxiety, and mental anguish.

## C.     Data Breaches and the Market for PII/PHI

32.     PII and PHI are valuable commodities to identity thieves because once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

33.     In a consumer-driven world, the ability to capture and use consumer data to shape products, solutions, and the buying experience is critically important to a business's success.

34.     Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin" and that "[d]ata-driven companies are 23 times more likely to top their competitors in customer

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1  acquisition, about 19 times more likely to stay profitable and nearly seven times more likely to
2  retain customers."

3      35.    In 2013, the Organization for Economic Cooperation and Development
4  ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A
5  Survey of Methodologies for Measuring Monetary Value."  In this paper, the OECD measured
6  prices demanded by companies concerning user data derived from "various online data
7  warehouses."

8      36.    The OECD indicated that "[a]t the time of writing, the following elements of
9  personal data were available for various prices: USD 0.50 cents for an address, USD 2 for a
10  date of birth, USD 8 for a social security number, USD 3 for a driver's license number and
11  USD 35 for a military record. A combination of address, date of birth, social security number,
12  credit record and military [record] are estimated to cost USD 55."

13      37.    Consumer concerns for how companies use their data is on the rise. According
14  to Pew Research, 81% of U.S. adults are concerned about how companies use the data they
15  collect about them. Consumers increasingly say they don't understand what companies are
16  doing with their data, with 67% of U.S. adults saying they understand little to nothing about
17  what companies are doing with their personal data, up from 59% in 2019.

18      38.    When a victim's data is compromised in a breach, the victim is exposed to
19  serious ramifications regardless of the sensitivity of the data, including but not limited to
20  identity theft, fraud, decline in credit, inability to access healthcare, as well as legal
21  consequences.

22      39.    The U.S. Department of Justice's Bureau of Justice Statistics has found that
23  "among victims who had personal information used for fraudulent purposes, 29% spent a
24  month or more resolving problems" and that resolution of those problems could take more than
25  a year.  Indeed, data breaches and identity theft have a crippling effect on individuals and
26  detrimentally impact the economy as a whole.

CLASS ACTION COMPLAINT - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

40.     As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and financial fraud. Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the "dark web."

41.     Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

42.     With repeated warnings from FTC, GAO, Department of Justice, and FBI – Defendant had a duty to do more, not less – especially because it was in possession of highly sensitive medical data – the data that cannot be changed for Plaintiff and the Class. Defendant has no excuse for its failure to implement robust security measures and instead ignored the warnings, and the cybersecurity mandated by the industry standard.

43.     When companies entrusted with personal data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harm irreparable.

44.     In this black market, criminals seek to sell the spoils of their cyberattacks to identity thieves who desire the data in order to extort and harass victims and take over victims' identities to open financial accounts and otherwise engage in illegal financial transactions under the victims' names.

45.     PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. The market for individuals' data continues to grow.

46.     Indeed, an entire economy exists related to the value of personal data. In 2023, the big data technology market was valued at roughly $349 billion, and that value is expected to grow from roughly $397 billion in 2024 to $1,194 billion by 2032.

CLASS ACTION COMPLAINT - 10

47.    Defendant knew or should have known that Plaintiff's and Class Members' Private Information is valuable, both to legitimate entities, like Defendant, and to cybercriminals.

48.    Defendant knew or should have known that Plaintiff and Class Members would reasonably rely upon and trust Defendant's promises regarding security and safety of their data and systems, and that their valuable Private Information would be protected.

49.    By collecting, using, selling, monitoring, and trafficking Plaintiff's and other patients' Private Information, and failing to protect it by maintaining inadequate security systems, failing to properly archive the Private Information, allowing access of third parties, and failing to implement security measures, Defendant caused harm to Plaintiff and other Laboratory Services Cooperative patients.

**D.    Defendant's Duty to Safeguard Private Information**

50.    Defendant collects, receives, and accesses patients' extensive individually identifiable information. This Private Information includes identifiers, such as full names, SSNs, driver's license or passport numbers, medical information, such as dates of service, diagnoses, treatments, and lab results, health insurance information, such as plan types, insurers, and member/group ID numbers, and billing, and financial data, such as claims, billing details, and bank/payment information.

51.    Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that an entity's failure to maintain reasonable data security constitutes an "unfair practice" in violation of the FTC Act. See, e.g., FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

52.    The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential

CLASS ACTION COMPLAINT - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.

54.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

55.     The FTC further recommends that entities not maintain PII or PHI longer than needed for the authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

56.     Furthermore, the FTC requires entities like Defendant to conduct comprehensive risk assessments; implement and regularly review access controls; encrypt customer information; use multi-factor authentication; securely dispose of customer data; maintain logs of authorized user activity; monitor for unauthorized access; train employees in security awareness; and perform regular audits, penetration tests, and system-wide scans to identify known security vulnerabilities. Had Defendant properly implemented these safeguards, the Data Breach could have been prevented.

57.     Defendant failed to implement basic data security measures, leading to the breach and exposing the personal information of thousands. By disregarding key FTC

CLASS ACTION COMPLAINT - 12

protocols, Defendant allowed a hacker to exfiltrate substantial amounts of consumer data. A proper security program should have included employee training on phishing and social engineering, network segmentation, monitoring of external emails, use of multi-factor authentication, strict data handling policies, regular audits, and 24/7 system monitoring. Had Defendant maintained these safeguards and enforced them consistently, the Data Breach could have been prevented.

58.    Plaintiff and Class Members provided their Private Information to Laboratory Services Cooperative with the reasonable expectation and mutual understanding that Laboratory Services Cooperative would comply with its obligations to keep such information confidential and secure from unauthorized access.

59.    Laboratory Services Cooperative's failure to provide adequate security measures to safeguard members' Private Information is especially egregious because it operates in a field that has recently been a frequent target of scammers attempting to gain access to confidential PII/PHI.

**E.    <u>Consumer Impact and Fallout from the Data Breach</u>**

60.    Plaintiff and the Class have suffered actual harm as a direct result of Defendant's conduct. Defendant failed to implement adequate security measures, which led to a data breach that exposed the Private Information of Plaintiff and the Class. As a result, unauthorized third parties accessed and misappropriated this sensitive data. That information is now in circulation among criminal actors and is likely to be sold, traded, and misused for years to come, placing Plaintiff and the Class at ongoing risk of identity theft, fraud, and other serious harm.

61.    Plaintiff and Class Members are now exposed to a wide range of cybercrimes, have suffered a loss in the value of their personal information, and have been compelled to undertake remedial measures.

CLASS ACTION COMPLAINT - 13

62.     Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that people lost approximately $18.7 million to such scams in 2023 alone.

63.     Defendant knew or should have known of the dangers of digital phishing scams. When Personal Information is employed in a social engineering scheme, criminals can gain unfettered access to individuals, or corporate databases, as the Data Breach itself evinces.

64.     Defendant's patients are now more likely to become victims of digital phishing attacks because of the compromised information.

65.     As a result of this breach, Plaintiff and impacted consumers will suffer unauthorized email solicitations and experience a significant increase in suspicious phishing scam activity via email, phone calls, and text messages following the breach. In addition, Plaintiff, as a result of the breach, has spent significant time and effort researching the breach, monitoring her accounts for fraudulent activity, and dealing with increased unsolicited emails and texts.

66.     As a direct and proximate result of Defendant's breach of confidence, and failure to protect Private Information, Plaintiff and the Class have also been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this Private Information, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen Private Information, illegal sales of the compromised Private Information on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties, decreased credit scores, lost work time, and other injuries. Defendant, through its misconduct, has enabled numerous bad actors to sell and profit off of Private Information that belongs to Plaintiff.

CLASS ACTION COMPLAINT - 14

67.    Plaintiff is now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates incurring out-of-pocket expenses to pay for these services.

68.    Because personal data is valuable personal property, market exchanges now exist where internet users like Plaintiff and Class Members can sell or monetize their own personal data.

69.    In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to legitimate marketers or app developers.  For example, consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.

70.    Accordingly, as a result of the Data Breach, Plaintiff lost the sale value of her Private Information and the opportunity to control how it is used. That a threat actor specifically targeted Defendant demonstrates just how valuable Plaintiff's Private Information can be to hackers and the significant value of Plaintiff's Private Information to cybercriminals.

71.    A data breach represents a significant violation of privacy, extending far beyond the mere loss of data. When sensitive personal information is compromised, individuals face a cascade of potential harm that erodes their sense of security and control, as information that they thought would remain confidential and private has now been leaked to the outside world, and which they no longer exercise control over. This exposure can lead to a profound sense of vulnerability, as individuals grapple with the knowledge that their most personal details are now in the hands of unknown actors, free to circulate and be publicized now, or at any time in the future.

72.    Information regarding an individual's health and medical choices, such as here, is one of the most personal and private types of information that exists. An individual's right to privacy regarding their body, their medical care, and their reproductive choices are some of the most sacrosanct and inviolable rights an individual can possess. Harm relating to an

CLASS ACTION COMPLAINT - 15

1 individual's loss of privacy and dignitary harm has also long been recognized by courts and in

2 the common law.

3       73.    When an individual loses this privacy and their personal health and medical

4 information is made public, such as here through its acquisition by criminal third parties, this

5 harm cannot be undone. Defendant's failure to safeguard this sensitive information has stripped

6 Plaintiff and the Class Members of this essential control, exposing them to the potential for

7 enduring emotional distress and the profound sense of vulnerability that accompanies the public

8 exposure of deeply private matters.

9       74.    This is a fundamental violation of an individual's control over their own

10 personal narrative and image to which they provide the world. By stripping Plaintiff and the

11 Class Members of their right to control this information about themselves, Defendant has done

12 immense harm to their rights to privacy as well as their personal dignity and bodily

13 sovereignty. As a result, while difficult to quantify, this harm is very real, long-lasting, and

14 severe and has caused real damage to Plaintiff and the Class Members, both emotionally and

15 through their permanent loss of security and fundamental right to privacy and bodily autonomy.

16 **F.**    **Defendant's Failure to Invest in Adequate and Necessary Data Security**

17       75.    In the years immediately preceding the Data Breach, Defendant knew or should

18 have known that its computer systems were a target for cybersecurity attacks.

19       76.    The FBI, FTC, GAO, U.S. Secret Service, United States Cybersecurity and

20 Infrastructure Security Agency, State Attorney General Offices and many other government

21 and law enforcement agencies, and hundreds of private cybersecurity and threat intelligence

22 firms, have issued warnings that put Defendant on notice, long before the Data Breach, that (1)

23 cybercriminals were targeting companies that store personal health information, such as

24 Defendant; (2) cybercriminals were ferociously aggressive in their pursuit of large collections

25 of Private Information like that in possession of Defendant; (3) cybercriminals were selling

26

CLASS ACTION COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    large volumes of Private Information and corporate information on Dark Web portals; and (4)

2    the threats were increasing.

3        77.    Had Defendant exercised reasonable diligence and responsibility, it would have

4    implemented fundamental cybersecurity measures necessary to protect the Private Information

5    in its possession. These include addressing key vulnerabilities such as: (i) the failure to conduct

6    a comprehensive risk assessment covering internal systems, third-party vendors, and cloud-

7    based services; (ii) the failure to promptly patch known and publicly disclosed vulnerabilities,

8    and the lack of a mechanism for processing vulnerability reports; (iii) misconfigured devices

9    and servers; (iv) storage of unencrypted data and/or inadequate encryption key management

10   and safeguarding; (v) continued use of end-of-life—and therefore unsupported—devices,

11   operating systems, and applications; (vi) employee errors and accidental disclosures, including

12   lost data, files, drives, devices, computers, and improper disposal; (vii) failure to block

13   malicious email; and (viii) users falling victim to business email compromise (BEC) schemes

14   and social engineering exploits.

15       78.    Considering the information and warnings readily available to Defendant before

16   the Data Breach, Defendant had reason to be on guard and to increase data security to avoid an

17   attack.

18       79.    Prior to the Data Breach, Defendant knew or should have known that there was

19   a foreseeable risk that a cyberattack could result in unauthorized access, exfiltration, and

20   misuse of Plaintiff's and Class Members' Private Information by malicious actors.

21       80.    Data security experts emphasize that most data breaches are preventable when

22   organizations follow well-established security practices. These include regularly auditing and

23   reevaluating their data protection measures, staying vigilant against evolving cybercriminal

24   tactics, and consistently training and retraining employees. Had Defendant implemented and

25   maintained such practices, this Data Breach could have been avoided.

26

CLASS ACTION COMPLAINT - 17

1

**CLASS ALLEGATIONS**

2      81.    Plaintiff brings this action on her own behalf and on behalf of all other persons

3  similarly situated. The Class which Plaintiff seeks to represent comprises:

4      Nationwide Class:
       **All residents of the United States whose Private Information was**
5      **exposed while in the possession of Defendant, or any of its subsidiaries**
6      **and/or agents, during the Data Breach.**

7      New York Subclass:
       **All individuals who were citizens or residents of New York at the time**
8      **they did business with Defendant, and whose Private Information was**
       **exposed while in the possession of Defendant, its subsidiaries, and/or**
9      **agents, as a result of the Data Breach.**

10     These definitions may be further defined or amended by additional pleadings,

11  evidentiary hearings, a class certification hearing, and orders of this Court.

12     82.    The Class is comprised of approximately 1,600,000 of Laboratory Services

13  Cooperative's patients who provided their Private Information, to Defendant, directly or

14  indirectly, in order to obtain medical services in the past and were part of the Data Breach (the

15  "Class Members"). The Class is so numerous that joinder of all members is impracticable and

16  the disposition of their claims in a class action will benefit the parties and the Court.

17     83.    There is a well-defined community of interest in the questions of law and fact

18  affecting the members of the Class, as all were subjected to the same uniform and misleading

19  advertising and material omissions. The common questions of law and fact substantially

20  outweigh any individual issues. These shared questions include, but are not limited to, the

21  following:

22          a.    Whether Defendant violated New York General Business Laws § 349.

23          b.    Whether Defendant's failure to implement effective security measures to
24                protect Plaintiff's and the Class's Private Information was negligent;

25          c.    Whether Defendant breached express and implied warranties of security
26                to the Class;

CLASS ACTION COMPLAINT - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

d. Whether Defendant represented to Plaintiff and the Class that it would protect Plaintiff's and the Class Members' Private Information;

e. Whether Defendant owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

f. Whether Defendant breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

g. Whether Class Members' Private Information was accessed, compromised, or stolen in the Data Breach;

h. Whether Defendant's conduct caused or resulted in damages to Plaintiff and the Class;

i. Whether Defendant failed to notify the public of the breach in a timely and adequate manner;

j. Whether Defendant knew or should have known that its systems, including but not limited to training protocols and policies, left it vulnerable to the Data Breach;

k. Whether Defendant adequately addressed the vulnerabilities that allowed for the Data Breach; and

l. Whether, as a result of Defendant's conduct, Plaintiff and the Class are entitled to damages and relief.

84. Plaintiff's claims are typical of the claims of the proposed Class, as Plaintiff and Class Members were harmed by Defendant's uniform unlawful conduct.

85. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action litigation and other complex litigation.

CLASS ACTION COMPLAINT - 19

86.     Plaintiff and the Class have suffered injury because of Defendant's false, deceptive, and misleading representations.

87.     Plaintiff would not have allowed Defendant to have access to her Private Information but for the reasonable belief that Defendant would safeguard her data and Private Information.

88.     The Class is identifiable and readily ascertainable. Notice can be provided to such patients using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

89.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

90.     The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

91.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

92.     Absent a class action, Defendant will likely retain the benefits of its misconduct. Given the relatively small value of individual Class Members' claims, few—if any—would be able to pursue legal action on their own. Without a representative action, Class Members will

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    continue to suffer harm, and Defendant—and other similarly situated entities—will be

2    permitted to persist in their unlawful conduct and retain the proceeds of their ill-gotten gains.

3    **<u>COUNT I</u>**

**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349**
4    **N.Y. GEN. BUS. LAW § 349**
    ***(On Behalf of Plaintiff and the New York Subclass)***

5    93.    Plaintiff realleges and incorporates all preceding allegations as though fully set

6

7    forth herein.

8    94.    Plaintiff brings this claim on behalf of herself and the New York Subclass.

9    95.    Defendant engaged in deceptive acts and practices in the conduct of its business,

10   trade, and commerce, or in the furnishing of services, in violation of N.Y. Gen. Bus. Law §

11   349, including: (i) failing to implement and maintain reasonable data security measures to

12   protect Plaintiff's and the New York Subclass Members' Private Information, which directly

13   and proximately caused the Data Breach; (ii) failing to identify and address foreseeable security

14   vulnerabilities and to improve security protocols, despite knowing of the increasing risk of

15   cyberattacks, which directly and proximately caused the Data Breach; (iii) failing to comply

16   with statutory and common law duties related to the security and privacy of Plaintiff's and the

17   New York Subclass Members' Private Information, including those duties established by the

18   FTC Act, 15 U.S.C. § 45, which directly and proximately caused the Data Breach; (iv)

19   misrepresenting to Plaintiff and Class Members that it would safeguard their Private

20   Information through reasonable security measures; (v) misrepresenting its compliance with

21   statutory and common law obligations relating to the confidentiality and security of Private

22   Information, including obligations under the FTC Act; (vi) omitting, suppressing, and

23   concealing the material fact that it had not adequately secured Plaintiff's and the New York

24   Subclass Members' Private Information; and (vii) omitting, suppressing, and concealing the

25   material fact that it was not in compliance with applicable data protection laws and industry

26   standards.

CLASS ACTION COMPLAINT - 21

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

96.     Defendant's misrepresentations and omissions were material and likely to deceive a reasonable consumer concerning the adequacy of Defendant's data security and its ability to safeguard Private Information.

97.     As a direct and proximate result of Defendant's unlawful and deceptive acts and practices, Plaintiff and the New York Subclass have suffered, and will continue to suffer, damages and other actual and ascertainable losses, including but not limited to: (i) an increased and imminent risk of identity theft; (ii) the improper exposure and compromise of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) loss of the value of their Private Information, which has recognized market value; (v) time and money spent mitigating the effects of the Data Breach; and (vi) actual or attempted fraud.

98.     Defendant's conduct affected the public interest and harmed consumers broadly, including numerous New York residents impacted by the Data Breach.

99.     The deceptive and unlawful conduct of Defendant caused substantial injury to Plaintiff and the New York Subclass, which they could not reasonably have avoided.

100.    Plaintiff and the New York Subclass seek all monetary and non-monetary relief permitted under law, including actual and statutory damages, treble damages, injunctive relief, and an award of attorneys' fees and costs.

**COUNT II**
**NEGLIGENCE**
***(On Behalf of the Plaintiff and Nationwide Class)***

101.    Plaintiff realleges and fully incorporates all allegations in all preceding paragraphs.

102.    Defendant owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that consumers' Private Information was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems

CLASS ACTION COMPLAINT - 22

1    that are compliant with industry practices; and (d) promptly detecting and notifying affected

2    parties of a data breach.

3        103.    Defendant's duties to use reasonable care arose from several sources, including

4    those described below. Defendant had a common law duty to prevent foreseeable harm to

5    others, including Plaintiff and Class Members, who were the foreseeable and probable victims

6    of any inadequate security practices.

7        104.    Defendant had a special relationship with Plaintiff and Class Members, which is

8    recognized by laws and regulations, as well as common law. Defendant was in a position to

9    ensure that its systems were sufficient to protect against the foreseeable risk of harm to class

10   members from a data breach. Plaintiff and Class Members were compelled to entrust Defendant

11   with their Private Information. At relevant times, Plaintiff and Class members understood that

12   Defendant would take adequate security precautions to safeguard that information. Only

13   Defendant had the ability to protect Plaintiff's and Class Members' Private Information it held.

14       105.    Defendant knew or should have known that Plaintiff's and the Class Members'

15   Private Information is information that is frequently sought after by criminals.

16       106.    Defendant knew or should have known that Plaintiff and Class Members would

17   suffer harm if their Private Information was leaked.

18       107.    Defendant knew or should have known that its security systems were not

19   adequate to protect Plaintiff's and the Class Members' Private Information from a data breach.

20       108.    Defendant knew or should have known that adequate and prompt notice of the

21   Data Breach was required such that Plaintiff and the Class could have taken more swift and

22   effective action to change or otherwise protect their Private Information. Defendant failed to

23   provide timely notice upon discovery of the data breach. Class Members were informed of the

24   data breach on April 10, 2025, with many not receiving actual notice. Defendant had learned of

25   the data breach nearly six months prior, in October 2024.

26

CLASS ACTION COMPLAINT - 23

1    109.    Defendant's conduct as described above constituted an unlawful breach of its

2   duty to exercise due care in collecting, storing, and safeguarding Plaintiff's and the Class

3   Members' Private Information by failing to design, implement, and maintain adequate security

4   measures to protect this information. Moreover, Defendant did not implement, design, or

5   maintain adequate measures to detect a data breach when it occurred.

6    110.    Defendant's conduct as described above constituted an unlawful breach of its

7   duty to provide adequate and prompt notice of the data breach.

8    111.    Plaintiff's and the Class Members' Private Information would have remained

9   private and secure had it not been for Defendant's wrongful and negligent breach of its duties.

10   The leak of Plaintiff's and the Class Members' Private Information, and all subsequent

11   damages, was a direct and proximate result of Defendant's negligence.

12    112.    Defendant's negligence was, at least, a substantial factor in causing Plaintiff's

13   and the Class's Private Information to be improperly accessed, disclosed, and otherwise

14   compromised, and in causing Class Members' other injuries arising out of the Data Breach.

15    113.    The damages suffered by Plaintiff and the Class were the direct and reasonably

16   foreseeable result of Defendant's negligent breach of its duties to adequately design,

17   implement, and maintain security systems to protect Plaintiff's and Class Members' Private

18   Information.

19    114.    Defendant knew or should have known that its security for safeguarding

20   Plaintiff's and Class Members' Private Information was inadequate and vulnerable to a data

21   breach.

22    115.    Defendant's negligence directly caused significant harm to Plaintiff and Class

23   Members.

24

25

26

CLASS ACTION COMPLAINT - 24

**<u>COUNT III</u>**
**BREACH OF EXPRESS WARRANTY**
*(On Behalf of Plaintiff and the Nationwide Class)*

116.    Plaintiff realleges and incorporates all preceding allegations as though fully set forth herein.

117.    Defendant made an express warranty to Plaintiff and Class Members that it is committed to protecting the Private Information entrusted to it, by representing the same to Plaintiff's and the Class Members' medical providers. In order to obtain Defendant's services, Plaintiff and Class Members were required to provide their Private Information which they reasonably believed, based on their medical providers' express representations, would be kept private and secure.

118.    Defendant's express warranties regarding its security standards made to Plaintiff and the Class appear throughout Planned Parenthood's Privacy Policy, which explicitly applies not only to Planned Parenthood itself but also to its affiliates, including Laboratory Services Cooperative. The promise of security is associated with the offerings and services, and therefore formed the basis of the bargain.

119.    Plaintiff and the Class engaged in business with Defendant, including entrusting it with their Private Information, with the expectation that the information they provided would be kept safe, secure, and private in accordance with the express warranties made by Defendant through Planned Parenthood's website and Privacy Policy.

120.    Defendant breached the express warranties made to Plaintiff and Class Members by failing to provide adequate security to safeguard Plaintiff's and the Class's Private Information. As a result, Plaintiff and Class Members suffered injury and deserve to be compensated for the damages they suffered.

121.    Plaintiff and Class Members paid money to purchase services from Defendant. However, Plaintiff and Class Members did not obtain the full value of the advertised services. If Plaintiff and other Class Members had known that their Private Information would be

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    exposed as a result of purchasing those services, then they would not have purchased the

2    services.

3        122.    Plaintiff and the Class are therefore entitled to recover all remedies available for

4    Defendant's breach of express warranty, as deemed appropriate by this Court.

5                            **<u>COUNT IV</u>**
                       **BREACH OF IMPLIED CONTRACT**
6                *(On Behalf of Plaintiff and the Nationwide Class)*

7        123.    Plaintiff realleges and incorporates all preceding allegations as though fully set

8    forth herein.

9        124.    At all relevant times, Defendant had a duty, or undertook and/or assumed a duty,

10   to implement a reasonable data privacy and cybersecurity protocol, including adequate

11   prevention, detection, and notification procedures, in order to safeguard the Private Information

12   of Plaintiff and the Class Members, and to prevent the unauthorized access to and disclosures

13   of this data.

14       125.    Among other things, Plaintiff and Class Members were required to provide their

15   Private Information to Defendant in the course of conducting business with it. This exchange

16   gave rise to implied contracts obligating Defendant to implement and maintain reasonable data

17   security measures sufficient to safeguard and protect the confidentiality and privacy of

18   Plaintiff's and Class Members' Private Information.

19       126.    When Plaintiff and Class Members provided their Private Information to

20   Defendant, they entered into implied contracts with Defendant pursuant to which Defendant

21   agreed to reasonably protect such information.

22       127.    By entering into such implied contracts, Plaintiff and Class Members reasonably

23   believed and expected that Defendant's data security practices complied with relevant laws and

24   regulations and were consistent with industry standards.

25

26

CLASS ACTION COMPLAINT - 26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

128.    Under implied contracts, Defendant and/or their affiliated providers promised and were obligated to protect Plaintiff's and Class Members' Private Information. In exchange, Plaintiff and Class Members agreed to turn over their Private Information.

129.    Defendant's express representations, including, but not limited to, the express representations found in their notices of privacy practices, memorialize and embody the implied contractual obligations requiring Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

130.    Plaintiff and Class Members performed their obligations under the contract when they provided their Private Information in consideration for Defendant's services.

131.    Defendant materially breached its contractual obligations to protect the Private Information it gathered when the information was accessed and exfiltrated during the Data Breach.

132.    Defendant materially breached the terms of the implied contracts, including, but not limited to, the terms stated in the relevant notices of privacy practices. Defendant did not maintain the privacy of Plaintiff's and Class Members' Private Information as evidenced by its notification of the Data Breach to Plaintiff and Class Members.

133.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

134.    As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive full benefit of the bargain they entered into.

135.    Had Defendant disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither Plaintiff, Class Members, nor any reasonable person would have entered into the aforementioned contracts with Defendant.

136.    As a direct and proximate result of the data breach, Plaintiff and Class Members have suffered, and will continue to suffer, harm—including the unauthorized disclosure of their

CLASS ACTION COMPLAINT - 27

Private Information, loss of control over that information, out-of-pocket expenses, increased future risk of harm, and loss of the benefit of their bargain with Defendant.

**COUNT V**
**INVASION OF PRIVACY**
*(On Behalf of Plaintiff and the Nationwide Class)*

137.    Plaintiff realleges and incorporates all preceding allegations as though fully set forth herein.

138.    Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their Private Information that Defendant failed to adequately protect against compromise from unauthorized third parties.

139.    Defendant owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

140.    Defendant failed to protect, and released to unknown and unauthorized third parties, the Private Information of Plaintiff and Class Members.

141.    Defendant unlawfully invaded Plaintiff's and Class Members' privacy by failing to safeguard their Private Information and knowingly employing insecure systems and practices. This invasion includes: (i) intruding upon their private affairs in a manner highly offensive to a reasonable person; (ii) failing to prevent unauthorized access and disclosure of their Private Information; and (iii) enabling the disclosure of that information without consent.

142.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

143.    Defendant knew, or acted with reckless disregard of the fact that, organizations handling PII or PHI are highly vulnerable to cyberattacks and that employing inadequate security and training practices would render them especially vulnerable to data breaches.

144.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information were unduly frustrated and thwarted, thereby causing Plaintiff and the Class Members undue harm.

CLASS ACTION COMPLAINT - 28

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

145.    Plaintiff, on behalf of the Class, seeks injunctive relief, restitution, and all other relief available at law or in equity. Absent an order from this Court enjoining Defendant's unlawful conduct, Plaintiff and Class Members will continue to suffer irreparable harm. Monetary damages alone are insufficient to remedy these injuries, as they will not stop the ongoing invasion of privacy.

## COUNT VI
## UNJUST ENRICHMENT
### *(On Behalf of Plaintiff and the Nationwide Class)*

146.    Plaintiff realleges and incorporates all preceding allegations as though fully set forth herein.

147.    Defendant funds its data security measures entirely from its general revenues, including payments made by or on behalf of Plaintiff and Class Members.

148.    A portion of the payments made by or on behalf of Plaintiff and Class Members was to be used to provide the necessary level of data security.

149.    Plaintiff and the Class conferred a monetary benefit on Defendant by obtaining tests from their medical provider, which in turn contracted with Defendant to perform the testing. In doing so, Plaintiff and Class Members provided Defendant with their most sensitive PII and PHI. In exchange, Plaintiff and Class Members should have received from Defendant the services that were subject to the transaction and had their PII protected with adequate data security measures.

150.    Defendant knew that Plaintiff and the Class conferred a benefit which it accepted, and through which Defendant was unjustly enriched. Defendant profited from these transactions and used Plaintiff's and Class Member's PII and PHI for business purposes to increase their revenues.

151.    Defendant unjustly enriched itself by avoiding the costs it should have incurred to implement adequate data security measures to protect Plaintiff's and Class Members' PII and PHI. Rather than investing in reasonable safeguards—such as effective security systems,

CLASS ACTION COMPLAINT - 29

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

employee training, and regular audits—Defendant chose to cut corners to boost its own profits. As a direct and proximate result of this profit-driven neglect, Plaintiff and the Class suffered significant harm.

152.    Under principles of equity and good conscience, Defendant should not be allowed to retain funds obtained from Plaintiff and the Class, as it failed to implement proper data management and security measures required by both common law and statutory duties.

153.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information nor would they have done business with Defendant.

154.    Plaintiff and the Class have no adequate remedy at law as discussed above.

155.    Defendant should be compelled to disgorge its profits and/or proceeds that it unjustly received as a result of having Plaintiff's and Class Members' Private Information, or alternatively, provide restitution in an amount to be determined at trial.

## COUNT VII
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### *(On Behalf of Plaintiff and the Nationwide Class)*

156.    Plaintiff realleges and incorporates all preceding allegations as though fully set forth herein.

157.    Defendant entered into a contract with each medical service provider to provide laboratory testing services. These contracts were made expressly for the benefit of the Plaintiff and Class Members, who gave their Private Information to their Medical Provider directly, as well as indirectly to the Defendant. Plaintiff and the Class Members only provided this information to their medical providers because they reasonably believed that their Private Information would be kept secure and private. In order to effectuate offered services, Defendant agreed to protect Plaintiff and Class Members' PII.

CLASS ACTION COMPLAINT - 30

158.    Therefore, the benefit of collection, protection, and storage of the Private Information was the direct, intended, and primary objective of the contracting parties as it related to those express terms.

159.    Defendant breached its contract with medical providers when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff and Class Members' PII.

160.    Defendant knew that a breach of its contractual obligations would directly harm the medical provider's stakeholders, including Plaintiff and Class Members—the intended beneficiaries of those obligations. Defendant's failure to uphold the terms of its contract, resulting in the Data Breach, foreseeably caused harm to Plaintiff and the Class.

161.    Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial, along with their costs, including attorneys' fees incurred.

<u>**COUNT VIII**</u>
**VIOLATION OF THE WASHINGTON STATE CONSUMER PROTECTION ACT**
**RCW 19.86.010 et seq.**
***(On Behalf of Plaintiff and the Nationwide Class)***

162.    Plaintiff realleges and incorporates all preceding allegations as though fully set forth herein.

163.    The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

164.    Defendant is a "person" as described in RCW 19.86.010(1).

165.    Defendant engages in "trade" and "commerce" as described in RCW 19.86.010(2) in that they engage in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

166.    By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged

CLASS ACTION COMPLAINT - 31

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in that Defendant's practices were injurious to the public interest because they injured other persons, had and continue to have the capacity to injure other persons.

167. In the course of conducting their business, Defendant committed "unfair or deceptive acts or practices" by, inter alia, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' Private Information, and violating the common law alleged herein in the process. Plaintiffs and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. As described above, Defendant's wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

168. Defendant also violated the CPA by failing to timely notify and concealing from Plaintiffs and Class Members information regarding the unauthorized release and disclosure of their Private Information. If Plaintiffs and Class Members had been notified in an appropriate fashion, and had the information not been hidden from them, they could have taken precautions to safeguard and protect their Private Information, medical information, and identities.

169. Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or deceptive acts or practices" in violation of the CPA in that Defendant's wrongful conduct is substantially injurious to other persons, had the capacity to injure other persons, and has the capacity to injure other persons.

170. The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

CLASS ACTION COMPLAINT - 32

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

171.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and their violations of the CPA, Plaintiffs and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia, (1) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their Private Information; (4) deprivation of the value of their Private Information, for which there is a well-established national and international market; and/or (5) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages.

172.     Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiffs, therefore, on behalf of themselves and Class Members, seek restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the Private Information entrusted to it.

173.     Plaintiffs, on behalf of themselves and Class Members, also seek to recover actual damages sustained by each of Class Members together with the costs of the suit, including reasonable attorneys' fees. In addition, Plaintiffs, on behalf of themselves and Class Members, request that this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each Class Member by three times the actual damages sustained not to exceed $25,000.00 per Class Member.

CLASS ACTION COMPLAINT - 33

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor on all causes of action and grant the following relief:

A.    Certify this action as a Class Action; appoint Plaintiff as Class Representative; designate the undersigned as Class Counsel; and direct that appropriate notice be provided to the Class;

B.    Issue injunctive relief requiring Defendant to implement specific measures, as set forth above, to remediate the harm suffered by Plaintiff and the Class, and to adopt and maintain reasonable security practices to prevent future harm;

C.    Award Plaintiff and the Class compensatory damages, including both economic and non-economic damages, as well as statutory damages, in amounts to be determined at trial;

D.    Grant equitable relief, including but not limited to restitution, disgorgement of profits, and an order requiring Defendant to cooperate with and financially support civil and/or criminal asset recovery efforts;

E.    Award pre-judgment and post-judgment interest at the applicable statutory rates;

F.    Award reasonable attorneys' fees and costs of suit incurred by Plaintiff and the Class;

G.    Award treble, exemplary, and/or punitive damages as permitted by law; and

H.    Grant such other and further relief as the Court may deem just and proper under the circumstances.


**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT - 34

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial

2    by jury on all claims so triable.

3

4    DATED this 21st day of April, 2025.

5                                    TOUSLEY BRAIN STEPHENS PLLC

6

7                                    By: *s/Jason T. Dennett*

8                                    Jason T. Dennett, WSBA No. 30686
                                     TOUSLEY BRAIN STEPHENS PLLC

9                                    1200 Fifth Avenue, Suite 1700
                                     Seattle, Washington 98101

10                                   Telephone: (206) 682-5600
                                     Facsimile: (206) 682-2992

11                                   jdennett@tousley.com

12                                   Sabita Soneji* (CA Bar No. 224262)

13                                   TYCKO & ZAVAREEI LLP
                                     1970 Broadway, Suite 1070

14                                   Oakland, California 94612
                                     Telephone: (510) 254-6808

15                                   Facsimile: (202) 973-0950
                                     ssoneji@tzlegal.com

16

17                                   *pro hac vice forthcoming*

18                                   Attorney for Plaintiffs

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 35